HUGH L. POPE, Trustee and Executor, *v.* SAFE DEPOSIT & TRUST COMPANY, Trustee, et al.

[No. 63, April Term, 1932.]

240

*Decided June 22nd, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William Cabell Bruce* and *Joseph S. Goldsmith,* for the appellant.

*George Weems Williams* and *Jesse Slingluff, Jr.,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

Henry May Gittings was the owner of certain property which he granted by two successive deeds of trust to Hugh L. Pope as trustee. The first conveyance is dated June 8th, 1923, and the second May 21st, 1924. The trustee accepted the trust, and the real and personal property which was conveyed has changed from time to time by the sale of the realty and by investment and reinvestment pursuant to the provisions of the deeds of trust, and the whole trust estate is now in the possession of the trustee. The portion of the first deed of trust which requires quotation consists of these two paragraphs:

"In the event the said grantor survives his said father, then this trust shall continue for a period of three years from and after the death of his father, the said John S. Gittings, and upon the termination of this trust said trustee, or his successors in the trust, shall forthwith transfer and deliver to said grantor the entire corpus or principal of the trust estate as it may then exist, together with any income in the hands of the trustee, free, clear and discharged of any and all trusts created hereunder and hereby.

"Upon the death of the said grantor, after that of his said father and before the trusts hereby created shall terminate, then in that event the property then comprising the trust estate shall vest in, be granted, assigned, paid over, transferred and delivered to such persons as the said grantor may designate in his last will and testament duly executed according to the laws of the State of Maryland, to take the same, but should the said grantor die intestate and/or without exercising the power of disposing by will as herein set forth, then the said trust estate, or such part thereof as may not be affected by the grantor's last will and testament, shall vest in and be granted, assigned, paid over, transferred and delivered to such persons as would under the present laws of the State of Maryland be entitled to take the estate of the said grantor as heirs at law."

The second deed of trust confirms and ratifies the first in direct and positive language, and extends the duration and enlarges the scope of the trust created by the first conveyance by this supplemental declaration of trust:

"And in further trust, in the event that the said Henry May Gittings shall die after the death of his father, John S. Gittings, and after the expiration of three years from and after that event, to continue to hold and manage said trust property, and to collect the income therefrom, and after paying thereout all necessary or proper expenses arising out of the administration of the trust, to pay over the net income unto the said Henry May Gittings, for and during the term of his natural life and, from and after the death of the said Henry May Gittings, to hold said trust property, free and discharged from the trusts hereby created to the use of such person or persons, as the said Henry May Gittings shall by his last will and testament, duly executed in accordance with the laws of the State of Maryland, have appointed to take the same, and in default of such appointment, to hold said trust property, free and discharged from the trusts hereby created, to the use of such person or persons as would, under the laws of the State of Maryland, in force at the time of the execution and delivery of said original trust deed of June 8, 1923, be entitled to take the same as the heirs at law of the said Henry May Gittings."

John S. Gittings, the father, died on January 23rd, 1926, and the son and grantor, Henry May Gittings, died on January 22nd, 1931, so the last-quoted declaration of trust is effective. The grantor was survived by his widow, Frederica H. Gittings, and one child, Rosalie May Gittings; and he died testate and appointed the said Hugh L. Pope his executor.

By his last will, Henry May Gittings exercised the power retained by him under the deed of trust, and appointed the entire trust estate to the Safe Deposit & Trust Company of Baltimore, a body corporate of the State of Maryland, its successors and assigns, trustee, upon the trust and confidence

to hold and manage and collect the income therefrom, and to divide the net income thereof as prescribed, and to use the principal if necessary to assure his widow an annual income or annuity of at least \$3,600 until her death or marriage, and then to pay the net income to his living children and their descendants as specified, and, upon the youngest living child reaching the age of twenty-one years, the trust estate shall cease and determine and vest absolutely in all of the testator's children then living, and the descendants then living of such children as may have died, share and share alike, *per stirpes* and not *per capita*. It is not necessary to state with greater detail the terms of the execution of this power, because no controversy is presented as to its form, and it is agreed that, if the will operates as an execution of the power of appointment, the trustee should deliver the trust estate to the Safe Deposit & Trust Company as trustee under the will of the donor, and that, if the will is not an execution of the power but operates as a testamentary disposition of a reversionary interest in Henry May Gittings, then the trustee should deliver the trust estate to the executor of the grantor for administration in the Orphans' Court of Baltimore City.

The property which was conveyed by the two deeds of trust was a vested remainder which was owned by the grantor, Henry May Gittings, and would vest in possession in fee simple and in severalty upon the death of his father, who held the precedent particular life estate; and the contention was made before the chancellor that a mere equitable life estate in Henry May Gittings was granted by the deeds of trust and the reversion remained in the grantor, so that, after the expiration of the grantor's equitable life estate, the reversion passed under the will of Henry May Gittings. The learned and experienced chancellor who heard the cause rejected this contention, and from his decree, Hugh L. Pope, as trustee under the deeds of trust and executor under the will of Henry May Gittings, has brought this appeal.

The grantor in both deeds of trust conveyed his estate in remainder in fee to the trustee, his heirs, successors, and assigns, so that the whole legal estate vested in the trustee,

who, with the consent and approval of the grantor, was empowered to mortgage, lease, sell, pledge, or partition all or any part of the property held in trust, and to invest, change, or vary the investment of the corpus of the trust. The trust, as ultimately created, was for the use and benefit of the grantor for and during his life, and then to the use of such persons as the grantor should by his last will appoint, and, in default of such appointment, to the use of such persons as would, under the laws of the State of Maryland, in force on June 8th, 1923, be entitled to take as heirs at law of the grantor. The apt language of art employed, and the legal and equitable status created, clearly demonstrate that the grantor designed and intended the two deeds to be the instruments under which the complete title to the subject-matter of the conveyance was to devolve and vest. Upon the delivery of the second deed, there was no estate whatsoever remaining to the grantor, save only his equitable life estate, which, expiring with his death, was, *ex necessitate rei*, neither transmissible nor descendible. It is true he retained a power of appointment of the corpus of the trust in whole or in part, but the exercise of the power was limited to a will, and therefore could not be by deed. A power retained is, however, not an estate in the subject-matter of the power. As was said in *Maryland Mutual Benev. Society v. Clendinen*, 44 Md. 429, 433: "A power is defined to be a liberty or authority reserved by, or limited to, a party to dispose of real or personal property for his own benefit, or for the benefit of others, and operating upon an estate or interest, vested either in himself or in some other person; the liberty or authority, however, not being derived out of such estate or interest, but overreaching or superseding it, either wholly or partially." *Butler,* note 1 to *Co. Lit.* 342b; 1 *Chance on Powers,* sec. 1. Again: "That a person having a power over property has not, in strictness, any interest in or right to, the property to which the power relates, appears in early authorities." *Albany's* case, 1 Co. 110b; *Lampet's* case, 10 Co. 48b; Co. Lit. 265b. "Though when the power is for his own benefit he has the means of

acquiring such interest, right or title; and in all cases, by the execution of the power the possession, right, title or interest is altered or divested." *Id.* sec. 2; *Maundrell v. Maundrell,* 10 Ves. 246b, 255; 1 *Sugden on Powers,* 121(\*); 4 *Kent, Comentaries,* 319(\*).

The power in the instant case was limited in exercise to the life of the equitable tenant and to his last will executed in conformity with the law of Maryland. As the equitable life tenant the tenant, *qua* tenant, could assign, release, or incumber his life estate or have it subjected to the payment of his debts, but in no proprietary capacity could he alienate, bargain and sell, bequeath or devise the property which might be appointed. *Wilks v. Burns,* 60 Md. 64, 68; *Worthington v. Rich,* 77 Md. 265, 269-270, 26 A. 403; *Chenoweth v. Bullitt,* 224 Ky. 698, 6 S. W. (2nd) 1061; 1 *Tiffany on Real Property* (2nd Ed.), sec. 327, p. 1093, sec. 322, n. 41. Neither, if there were no fraud associated with the execution of the deed, could this property or estate arising upon the termination of his life be made subject to the claims of the appointor's creditors, whether in bankruptcy, insolvency, or otherwise; nor could it be taken by them in attachment or execution. *Balls v. Dampman,* 69 Md. 390, 394-395, 16 A. 16; *Price v. Cherbonnier,* 103 Md. 107, 110-111, 63 A. 209; *De Bearn v. Winans,* 111 Md. 434, 74 A. 626; *Jones v. Clifton,* 101 U. S. 225, 229-231, 25 L. Ed. 908; *Story's Eq. Juris.* (14th Ed.), sec. 250 (176); *Cleveland Nat. Bank v. Morrow,* 99 Tenn. 527, 42 S. W. 200; *Rhode Island Hospital Trust Co. v. Anthony.* 49 R. I. 339, 142 A. 531; *Holmes v. Coghill,* 12 Ves. Jr., 206. Nor could it be subjected to claim of dower by the wife of the donee. *Ray v. Pung,* 5 B. & Ald. 561, 106 Eng. Rep. 1296; *Sugden on Powers* (8th Ed.) 144 n.; *Armstrong v. Kerns,* 61 Md. 364, 369.

Furthermore, upon the exercise of the power, the persons taking under and by execution of the power took under the donor, *qua* donor, and in like manner as if the power, and the instrument executing it, had been embodied in the instrument by which the donor created the power. *Conner v.*

*Waring,* 52 Md. 724, 732-734; *Armstrong v. Kerns,* 61 Md. 364, 368-369; *Albert v. Albert,* 68 Md. 372, 12 A. 11; *Thomas v. Gregg,* 76 Md. 174, 24 A. 418; *Reed v. McIlvain,* 113 Md. 140, 77 A. 329; *Tiffany on Real Property* (2nd Ed.), secs. 314, 315.

On the other hand, if the donee had died without executing the power, the equitable title would have devolved upon the grantor's heirs at law, who would answer the description given by the deeds of trust. The membership of the class of heirs to take was therefore determined by the deeds of trust, and so, as in the contingency of the execution of the power, the equitable title and estate would vest in this class. The trustee having no further duty to discharge, except to execute the documents of transfer or title, both the legal and equitable estates would merge or be executed in the parties appointed, in the one contingency, and in the class to take in the other. No matter how the problem be regarded, the title and estate passed by the deeds of trust, and was not a part of the grantor's estate for administration by the orphans' court. *Perry on Trusts* (7th Ed.), secs. 351, 352. *Downes, Register, v. Safe Deposit & Trust Co.,* 163 Md. 30, 161 A. 400.

In *Miller on Construction of Wills,* sec. 254, p. 728, the author accurately wrote: "The operation of a power is illustrated by the rule that when the person holding a power of appointment over property executes it by making the appointment by his will, the property does not pass through his estate, but passes directly to the persons designated by him." *Evans v. Iglehart,* 6 G. & J. 171, 203, 204; *Harrison v. Denny,* 113 Md. 509, 524, 525, 77 A. 837.

The recent decision in *Darnall v. Connor,* 161 Md. 210, 155 A. 894, involved a question which the cause at bar does not present. In that case the court decided that the collateral inheritance tax, provided by section 124 of article 81 of the Code, was collectible upon certain legacies, because they came within the contemplation of the statute, and the rule that the exercise of a power of disposition relates back and dates from a previous deed creating the power is commonly

denied application under inheritance tax statutes. The decision did not attempt to modify established rules with reference to the devolution of title to property. *Warner v. Sprigg,* 62 Md. 14, and *Raffel v. Safe Deposit & Trust Company,* 100 Md. 141, 59 A. 702, are also relied upon by the plaintiff, but these cases dealt with instruments which are different in terms and purpose and are to be distinguished from the one at bar, and so are not controlling. See *Peter v. Peter,* 136 Md. 157, 168, 169, 110 A. 211; *American Colonization Society's Case,* 132 Md. 524, 532, 104 A. 120; *Olivet v. Whitworth,* 82 Md. 258, 33 A. 723; *Smith v. State,* 134 Md. 473, 107 A. 255.

The remaining question on this appeal relates to certain bonds, stocks, a mortgage, and a deposit in bank, which were acquired by Henry May Gittings at various and widely separated times, which were always in his possession, and which were found at his death in his personal safe deposit box, to which he alone had access. The deposit in bank was in his own name, as was the mortgage indebtedness, and the shares of stock were all registered in his name and some were pledged in bank to secure an individual loan. He received all the dividends, and neither by writing nor by appropriation was his wife recognized as having an interest in this personalty.

Against this there is the circumstance that he took a lease upon the homestead in the name of himself and his wife as tenants, with the option for them or the survivor of them to buy, and the fact that some while before his death, on two occasions, the husband made statements to the trustee. The first was that the securities not included in the trust were the property of himself and his wife, and that at his death they were hers; and the second was like to the first, except he added that he wanted to use them to make a payment on the homestead, but that the securities were their joint property. This testimony is all that reflects on the ownership of the securities by the wife. By the marriage settlement, made in May, 1924, in contemplation of marriage, it was agreed that the husband would execute the will which was probated after his death, and that, in consideration thereof, she would

release and renounce all claim of every nature and kind as wife or widow in all present and future real and personal property of her husband. Notwithstanding this agreement, there is no doubt that subsequently the husband could create a tenancy in entirety in personalty owned by himself absolutely by a gift to his wife. *Brewer v. Bowersox,* 92 Md. 567, 40 A. 1060; *In re Bauernschmidt's Estate,* 97 Md. 35, 54 A. 637. Nor is there any question that a trust of personal property might have been created by parol. *Stone v. National City Bank,* 126 Md. 231, 94 A. 657. But such loose, vague, and indefinite expressions as are on this record are insufficient to establish either a gift or a trust. A mere declaration of a purpose to create a gift or trust, a simple promise, without consideration, of a future donation, are alike insufficient. In order to establish a declaration of trust by parol, the trust must be clear and the evidence of it convincing. There must be an intention to transfer a present interest to the *cestui que trust,* and this requirement is not gratified by evidence which merely shows that the party with title and possession of the *res* intended it to belong, after his death, to another. *Moore v. Layton,* 147 Md. 244, 247, 248, 127 A. 756, 757; *Perry on Trusts* (7th Ed.), sec. 86, p. 99.

Similarly, as will appear from this excerpt from decision last cited: "There can be no gift which the law will recognize where there is reserved to the donor, either expressly or as a result of the circumstances and conditions attending the transaction, a power of revocation or a dominion over the subject of the gift. There must be no *locus poenitentiae,* and there is always a *locus poenitentiae* when the supposed donor may at any moment undo what he has done. *Brewer v. Bowersox,* 92 Md. 570 (48 A. 1060); *Whalen v. Milholland,* 89 Md. 199 (43 A. 45, 44 L. R. A. 208)." *In re Bauernschmidt's Estate,* 97 Md. 59, 61, 54 A. 637.

In the widow's testimony she frankly stated the securities were her husband's property, and all the facts and circumstances are in accord with this view. It would be a new and unwarranted precedent to hold either a gift or a trust

had been established by the testimony on this record. It is our judgment that the chancellor's decree should be affirmed.

The plaintiff in this case proceeded in his representative capacities as trustee and executor, and he was fully advised and protected by the decree of the chancellor, which was favorable to the two estates, and so there was no occasion for an appeal in his representative capacities, except for his own benefit, and he should bear individually the costs of this appeal. He cannot reduce either estate by an appeal in which neither would derive a benefit. *Perry on Trusts* (7th Ed.), sec. 928, p. 1576; *Ex parte Nicholas,* 142 Md. 614, 121 A. 627; *Holloway v. Safe Deposit & Trust Co.,* 152 Md. 302, 303, 136 A. 269.

> *Decree affirmed, and cause remanded; the appellant to pay individually the costs of this appeal.*