WILLIAM H. ARMSTRONG and SAMUEL SNOWDEN, Adm'rs of MARGARET F. WOELPER *vs.* KATE KERNS and THE BORDER STATE PERPETUAL BUILDING ASSOCIATION OF BALTIMORE CITY.

*Mortgage—Married Woman—Power—Execution.*

A sub-lease was made to a married woman, without any declaration or limitation to her separate use, but with full and absolute power in her to sell, mortgage or otherwise dispose of, or encumber the property, and to execute all proper and necessary deeds, mortgages or conveyances thereof, without the joinder or consent of her then or any future husband. HELD:

That a mortgage made by her alone without the joinder of her husband, was a valid execution of the power.

In a grant or lease to a married woman, whether the separate use be limited in the deed or raised by the statute, it is quite competent to confer upon the grantee or lessee a power of appointment or disposition independently of her husband; and by such power she may dispose of the property in the manner prescribed, without her husband's concurrence.

A married woman may execute any kind of power, whether simply collateral, appendant, or in gross; and it is immaterial whether it

was given to her while sole or married. In neither case is the concurrence of her husband necessary.

APPEAL from the Superior Court of Baltimore City.

This is an action of ejectment brought by the appellants against the appellees. The appellee, Kate Kerns, was the purchaser of the property sued for, under a decree of a Court of equity, the same having been sold at the instance of the mortgagee thereof, the Border State Perpetual Building Association of Baltimore City, the other appellee. She subsequently mortgaged the property to the said Building Association. The case was tried before the Court (BROWN, J.,) without the aid of a jury. The Court rendered a verdict in favor of the defendants, and judgment was entered accordingly. The plaintiffs appealed. The case is further stated in the opinion of the Court. The insertion of the prayers offered below is deemed unnecessary.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, and BRYAN, J.

*Hutton L. Bouldin,* and *Samuel Snowden,* for the appellants.

*James McColgan,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

The question, and indeed the only question, on the record before us is, whether the mortgage made by Margaret Woelper to the Border State Perpetual Building Association of Baltimore City, under the power contained in the sublease from Charles McColgan to Mrs. Woelper, is good and valid, or whether it be a nullity because of the non-joinder of her husband therein.

The sub-lease to Mrs. Woelper bears date the 20th of October, 1876, and on the same day, though after the exe-

cution of the sub-lease, the mortgage to the Building Association was made. The mortgage refers to the sub-lease as having been previously made and recorded. Mrs. Woelper died intestate in the spring of 1878, leaving her husband surviving ; and the mortgaged premises were afterwards sold, under a decree of a Court of equity, and the sale was finally ratified. The appellants, as administrators of Mrs. Woelper, brought the present action of ejectment for the recovery of the mortgaged premises, as part of the estate of the deceased.

At the common law, and before the passage of any enabling statute upon the subject, a married woman was competent to become a lessee for a term of years, because a lease was always presumed to be beneficial to the person taking it. *Co. Litt.,* 3 *a;* 4 *Cr. Dig., tit. Deed, ch.* 5, *sec.* 85, *p.* 79 ; *Archbold's Landlord and Tenant,* 42 ; *Smith's Law of Landlord and Tenant,* 55. She was not, however, capable of binding herself by covenant, though that disability has been removed by statute, as to all such covenants as run with or relate to the demised premises. *Acts of* 1867, *ch.* 223, *and of* 1882, *ch.* 385 ; *Cruzen vs. McKaig,* 57 *Md.,* 462. But the statute law of this State, embodied in the Code, Art. 45, has invested married women with full power and capacity to acquire *any* property, by purchase, gift, grant, devise, bequest, or in course of distribution ; and which property, thus acquired, is declared to be for her *separate use,* with power of devising the same as fully as if she were *féme sole,* or of conveying the same by a *joint deed* with her husband ; but if she die intestate, leaving children, her husband takes a life estate in her property, real and personal ; but if she die intestate, leaving *no* children, her husband takes a life estate in her real property, and her personal property vests in him absolutely. *Code, Art.* 45, *secs.* 2 *and* 11. The latter section invests her with power to convey her real or personal property, if her husband joins in the conveyance,

Armstrong and Snowden, Adm'rs *vs.* Kerns, *et al.*

whether the conveyance be absolute or by way of mortgage, etc. But it has never been considered that this statutory mode of conveyance by the wife, jointly with her husband, *was exclusive* of all other modes of conveyance that might be prescribed or authorized by the grantor, donor, or settler of property upon the wife, or that it rendered the wife incapable of executing a power. On the contrary, the object of the statute was rather to enlarge than to restrict her disposing power over the property acquired by her; and the modes and powers of disposition previously existing were in no manner intended to be denied or restrained. When a married woman acquires property in any of the modes prescribed by the statute, without any declaration or limitation to her separate use, and without any special mode or power of disposition annexed to the estate, the statutory use attaches, and the statutory mode of disposition exclusively applies and controls. But where property is conveyed or settled upon a *féme covert* to her *separate use*, and a specific mode of alienation or appointment is provided in the instrument creating the estate, that mode *must* be pursued, as it operates as a negation of any other, and is a paramount law governing and controlling the contract in relation to the property. In such case, however, if there be no specific mode of disposition prescribed, or no restriction thereon, the *féme covert* may act in reference to the disposition of the estate as a *féme sole. Cooke vs. Husbands, et al.,* 11 *Md.,* 492; *Buchanan vs. Turner,* 26 *Md.,* 1, 5.

In this case, as it appears, the sub-lease to Mrs. Woelper contains no declaration or limitation to the separate use of the sub-lessee, but it is a lease of a term generally, with covenant for renewal, with full and absolute power in Mrs. Woelper to sell, mortgage, or otherwise dispose of, or encumber the property, and to execute all proper and necessary deeds, mortgages or conveyances thereof, without the joinder or consent of her then or any future husband.

Armstrong and Snowden, Adm'rs *vs.* Kerns, *et al.*

It is contended, on the part of the appellants, that as the sub-lease was made to the wife generally, and not to her separate use, the rights of the husband attached and became vested in him, and that he could not be deprived of his marital rights by the execution of the power contained in the sub-lease to the wife : that such power was in conflict with and repugnant to the estate previously vested in the wife, under the statute, and that she could not divest herself of the estate transferred to her, nor defeat the rights of the husband without his concurrence, simply by the execution of the power. To this proposition, however, we cannot accede.

Nothing is better settled than that common law powers or authorities, of the character of the power in the instrument before us, may be inserted in every species of deeds of conveyance ; and they are either naked powers, or powers coupled with an interest. 4 *Cr. Dig.*, 145, 148. They are not limitations of the estate granted, but powers over the estate, which the grantor, donor or lessor may think proper to couple with the estate for the accomplishment of special objects. In a grant or lease to a married woman, whether the separate use be limited in the deed or raised by the statute, it is quite competent to confer upon the grantee or lessee a power of appointment or disposition independently of her husband; and by such power she may dispose of the property in the manner prescribed, without her husband's concurrence. This has been the settled law for generations past, and there is nothing in the statute to restrict it. As said by Sir EDWARD SUGDEN, (1 *Sug. on Pow.*, 181, 183,) it has long been firmly settled, that a married woman may execute a power, whether appendant, in gross, or simply collateral; and it is not material whether the power is given to an unmarried woman who afterwards marries, or to a woman while she is married ; in either case she may execute the power, and the concurrence of her husband is not necessary.

And so Chancellor KENT says, (4 *Kent Com.*, 324,) "that a *fême covert* may execute any kind of power, whether simply collateral, appendant, or in gross, and it is immaterial whether it was given to her while sole or married. The concurrence of the husband is in no case necessary."

The party taking under the power derives his estate from the deed creating the power; and hence the execution of the power, if it be a power appendant, overrides and divests the estate conveyed to the donee of the power. Therefore, the estate granted is always subject to the operation of the power annexed to or coupled with the estate, if the mode of execution prescribed differs from that legally incident to such estate. Thus, if a married woman is tenant for life, with a power of leasing in possession, she cannot raise a mortgage-term, without a statute deed, which, under our statute, would be a joint deed of herself and husband; but by the mere execution of her power, she may create a lease which will or may take effect entirely out of her interest. And so if she has a general power of appointment, with a limitation in default of appointment to herself in fee, she cannot affect the estate vested in her except by a statute deed; but she may defeat the limitation, and convey away the estate by the execution of her power. 1 *Sugden on Powers*, 181, 182.

In this case, it is very clear, the power to mortgage contained in the sub-lease from McColgan was well executed by Mrs. Woelper; and that being so, the right of the appellants to recover is precluded, and we must therefore affirm the judgment.

*Judgment affirmed.*

(Decided 21st February, 1884.)